The opinion of the court was delivered by
McEnery, J.
This is an injunction proceeding instituted by the plaintiff city against the defendant parish to restrain the latter from exercising jurisdiction, in the way of collecting licenses and taxes over certain territory, which the city claims is within her limits, in pursu - anee of Act 81 of 1873, fixing the southern boundary line of the city. After the passage of this act the city caused a survey to be made and *1062 the boundary ascertained, and by ordinance.of the council adopted the same. Believing this to be an error, the city caused two other surveys and maps to be made.
Under both maps and surveys the city exercised jurisdiction without complaint from the parish until 1894, when it'was last resurveyed by the parish surveyor. The parish now claims that the boundary first established by the city was a true interpretation of legislative intent, as it was contemporaneous with the act, and as it was a local matter, and as the State is not particularly interested, the city is concluded by her act and estopped from denying the boundaries first established.
It is immaterial what construction either party placed upon the act fixing the boundaries, and it is equally unimportant which political subdivision exercised jurisdiction over the disputed territory. There are no such doubts and uncertainties in the act that a resort to contemporaneous construction must be resorted to; nor is the act so ancient that we must look to custom and usage for its interpretation.
In nearly all European countries the rights and privileges, the civil franchises of municipalities owed their origin to treaty or contract between lord and dependent. Vested political rights are acquired by such treaties and contracts. Local self-government is guaranteed under our political system, in or out of a municipality, and the municipal organization as such has little or no special significance as an organization for the preservation of vested political rights. It has none It is the creature of positive law, erected into a geo - graphical and political subdivision in aid of and in furtherance of the general administration of the State.
It is subject to legislative will, aud can be controlled, under and subject te the organic law. It can be extended, diminished or destroyed in its geographical limits, as well as it can be granted greater power, which can be withdrawn, in the exercise of political administration. Therefore, in the extension of the limits of the city, and fixing its boundary, neither the city nor the parish in which the town is located can by any act place an interpretation upon the legislative will that could either extend or diminish the area intended to be embraced by the act fixing'the boundaries of the subordinate geographical and political division.
No vested right can be acquired by a municipal organization by its *1063 own act, or by the consent of another to said act, or by opposition thereto, as against the paramount authority of the State.
The act of the Legislature to be interpreted is as follows:
Act 81, of 1873, fixed the southern boundary of the city in the following language:
“ Commencing at a point on the east bank of the Ouachita river, 1140 feet south of the upper line of the plantation of Mrs. Nancy Bry, deceased; thence eastwardly to a point intersected by the eastern line of the extension of Jackson street, as extended, to the south line of Bry avenue, according to the survey of Frank Moore, surveyor of Ouachita parish; thence by an extension of the said Bry avenue in an easterly direction to the east bank of Young’s bayou.”
There is no contention on either side that the disrupted line should run due east. The contention is as to what particular direction the line should run toward the east. Both lines reach Young’s bayou toward the east, the one insisted upon by plaintiff bearing north 73 deg. east, and that by the defendant north 52 deg. and 45 seconds.
The line claimed by plaintiff runs nearly due east in the prolongation or extension of Bry avenue, without deflection.
That which the defendant asserts as the true line deflects at Jackson street, and turns to such an extent as to make an angle at that street. This deflection, however, makes the prolongation of Bry avenue parallel with the streets of the city in the older additions. But we do not think this fact can control the legislative will. It was new territory being added to the city, and we must look more to the area intended to be annexed than to the intention of preserving the beauty and symmetry of the streets and the exact proportion or size of the squares.
The defendant contends that under the act, the broad meaning of the word “ extension ” would justify the prolongation of Bry avenue as insisted upon by the parish.
Extension signifies enlargement in any direction, in length, breadth, or circumference. The extension, of course, is always in the direction of the lateral sides. To extend a street means its prolongation and continuance in the direction to which it already points, unless it appears that the change in its direction has been authorized. South Boston R. R. Co. vs. Middlesex R. R. Co., 121 Mass. 485.
Insurmountable physical objects may compel a deflection, but it *1064 must resume its course in the direction to its objective point. It is admitted that there are no physical obstructions in the way of extending Bry avenue on the line, north 73 east to which it pointed when the act was passed directing the extension of said avenue. The meaning of the act then is very plain. It authorized and directed the continuation of Bry avenue north 73 deg. east.
How can it be said to mean that the direction of the street or avenue must be changed so as to run north 52 deg. and 45 seconds east?
This is not a contract or agreement between two independent sovereignties, as to territory, which is to be interpreted by the manner in which the same has been executed. Therefore, there is no application to the case of some of the authorities referred to by the defendant. It is an act of the Legislature adding territory to a political subdivision of the State, and we are to determine what direction the State intended to give to an existing street in order to embrace the territory intended to be annexed.
We are of the opinion that the words “thence by an extension of the said Bry avenue in an easterly direction to the eastern bank of Young’s bayou” meant that the avenue should be continued on its existing line north 73 deg. east until it reached Young’s bayou.
It does not mean, as contended by defendant, that Young’s bayou was to be reached by the avenue in the most direct line, for the reason that the Legislature did not say so, and in doing so the avenue would have a deflection, forming an angle at its intersection with Jackson street, making a difference in its easterly direction of some 21 deg.
It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that the injunction herein be perpetuated, defendant to pay all costs.