THE TRENTON STREET RAILWAY COMPANY, respondent,

*v.*

THE PENNSYLVANIA RAILROAD COMPANY et al., appellants.

[Filed June 25th, 1901.]

By the eighth section of "An act to provide for the incorporation of street railway companies and to regulate the same," passed April 6th, 1886, as amended March 27th, 1889 (*Gen. Stat. p. 3216*), it is provided "that the board of aldermen, common council or township committee, upon the petition of the directors of any company incorporated under this act, or a majority thereof, for a location of the tracks of its railway therein, conformably to the route designated in their articles of incorporation, or for an extension of the same, shall give notice to all parties interested [in a specified manner] of the time and place at which they will consider such application for location; and, after hearing, they shall pass an ordinance refusing such location or extension, or granting the same, or any portion

Trenton St. Ry. Co. *v.* Penna. R. R. Co.

thereof, under such lawful restrictions as they may deem the interests of the public require; and the location or extension thus granted shall be deemed and taken to be the true location or extension of the tracks of the railway, if an acceptance thereof, in writing, by the directors, shall be filed with the secretary of state within thirty days after receiving notice, and a copy thereof delivered to the clerk or other equivalent officer of the municipality or township."—*Held*, that the right of a street railway company, incorporated under this act, to construct an extension of its railway, depends, first, upon municipal action granting it authority to do so, with such restrictions as the municipal body may deem proper, and second, the filing by the company of an acceptance of the grant, with its restrictions, in the office of the secretary of state, and the delivery of a copy thereof to the clerk of the municipality.—*Held further*, that the statutory provision cited empowers the municipality to grant to a street railway company a right to extend its railway from its legally authorized terminus, but that it does not justify a grant to construct an addition to an extension which it has built without legal warrant.

On appeal from an order advised by Vice-Chancellor Reed, whose opinion is reported in *47 Atl. Rep. 819.*

*Mr. Alan H. Strong,* for the appellants.

*Mr John H. Backes,* for the respondent.

The opinion of the court was delivered by

Gummere, J.

This is an appeal from a decree of the chancellor defining the mode in which the extension of the street railway of the respondent shall cross the steam railroad of the appellants in the village of Yardville, the proceedings being had under the act of March 22d, 1895, entitled "An act to regulate the crossing points not within the limits of cities of this state, of steam railroads, by steam or electric railroads hereafter to be constructed." *Gen. Stat. p. 2717.* Upon an earlier application of the respondent, made, under this statute, for the same purpose, this court held, among other things, that it was incumbent upon the applicant to show that it had "legally laid its route over the appellants' railroad, and, as one of the steps to that end, that it had lawful power to lay out and construct its proposed extension." *Trenton Street Railway Co.* v. *United New Jersey Railroad and Canal Co., 15 Dick. Ch. Rep. 500.*

One of the grounds upon which this appeal is based is that no right has been shown to exist in the respondent to build the extension which it proposes to construct across the railroad of the appellants. It appears by the respondent's petition and by the proofs in the case that the Trenton Street Railway Company was incorporated June 28th, 1898, by the consolidation of the Pennington Avenue Street Railway Company, the Mulberry Street Passenger Railway Company, the Ewing Passenger Railway Company and the Trenton Passenger Railway Company, Consolidated; and that the latter of these companies was itself created by the consolidation on September 21st, 1891, of the Trenton Horse Railroad Company, the City Railway Company, the Hamilton Township Street Railway Company and the South Clinton Avenue and Broad Street Railway Company. This last-mentioned company was incorporated under an act entitled "An act to provide for the incorporation of street railway companies and to regulate the same," approved April 6th, 1886. *Gen. Stat. p. 3216.*

By the eighth section of this act, as amended March 27th, 1889, it is provided

"that the board of aldermen, common council or township committee of any municipality or township, upon the petition of the directors of any company incorporated under this act, or a majority thereof, for a location of the tracks of its railway therein, conformably to the route designated in their articles of incorporation, or for an extension of the same, shall give notice to all parties interested by publication in one or more newspapers published and circulating in such municipality, or, if none be published there, then by posting in five of the most public places in such municipality or township, at least fourteen days before their meeting, of the time and place at which they will consider such application for location; and, after hearing, they shall pass an ordinance refusing such location or extension, or granting the same, or any portion thereof, under such lawful restrictions as they may deem the interests of the public require; and the location or extension thus granted shall be deemed and taken to be the true location or extension of the tracks of the railway, *if an acceptance thereof, in writing, by said directors, shall be filed with the secretary of state within thirty days after receiving notice thereof, and a copy thereof delivered to the clerk or other equivalent officer of the municipality or township.*"

Pursuant to the authority conferred by this section, the township committee of Hamilton township, on the 17th day of No-

vember, 1890, upon the petition of the directors of the South Clinton Avenue and Broad Street Railway Company, passed an ordinance granting to it the right to construct an extension of its railway from the city line of Trenton to Harrison avenue, in said township, and locate said extension upon South Clinton avenue and Cedar lane. Within the thirty days prescribed by the statute an acceptance of the ordinance, in writing, by the directors of the company, was filed with the secretary of state, and a copy thereof delivered to the township clerk. Before this company had constructed its extension, however, it became merged into the Trenton Passenger Railway Company, Consolidated, and this latter company thereby became vested with all the rights, privileges and franchises, as well as all the property, rights of way and all and every the other interests of the South Clinton Avenue and Broad Street Railway Company. *Gen. Stat. p. 3226 §§ 79, 80.*

On the 12th day of May, 1893, the Trenton Passenger Railway Company, Consolidated (hereinafter designated the consolidated company), was granted permission by the township committee of Hamilton township to extend its railway from the city line of the city of Trenton, through South Broad street to Cedar lane, and thence from the intersection of Harrison avenue to the toll-house of the Crosswicks and Trenton Turnpike Company. On the 8th day of March, 1894, the said township committee passed a further ordinance granting authority to the consolidated company to extend its railway from the said toll-house, along the turnpike road of the Crosswicks and Trenton Turnpike Company, to the village of White Horse. The consolidated company failed to file with the secretary of state an acceptance of either one of these two ordinances, within the thirty days required by the statute, or at any other time, but, notwithstanding this omission, proceeded to construct an extension of its railway from the Trenton city line to the toll-house of the Crosswicks and Trenton Turnpike Company.

So much of this extension as lies between the Trenton city line and Harrison avenue was authorized both by the ordinance of November 17th, 1890, above referred to, and by that of May 12th, 1893, and, as an acceptance of the ordinance of November

17th, 1890, was filed with the secretary of state, and a copy thereof delivered to the clerk of the township, in accordance with the provision of the statute, and as the consolidated company was, at the time when it built this portion of its extension, vested with all the rights, privileges and franchises of the South Clinton Avenue and Broad Street Railway Company, and all its property and rights of way, it had full power and authority to construct the same by virtue of that ordinance and its acceptance. But it had no legal right to construct that part of said extension which lay beween Harrison avenue and the toll-gate of the Crosswicks and Trenton Turnpike Company, for the reason that no acceptance of the ordinance authorizing it had ever been filed with the secretary of state.

The right of a street railway company to extend its railway, given by the eighth section of the act of April 6th, 1886, as amended in 1889, is made, by the statute, to depend upon two conditions—*first,* the passage of an ordinance, by the municipal body, granting the proposed extension and locating the tracks, under such restrictions as said body may deem the interests of the public require, and *second,* the filing of an acceptance of such ordinance, within thirty days, in the office of the secretary of state, and the delivery of a copy thereof to the clerk or other equivalent officer of the municipality. The failure of the company to file its acceptance of the ordinance within the specified time is just as fatal to its right to construct its proposed extension as is action by the municipal body refusing its application.

No action was taken by the consolidated company under the ordinance of March 8th, 1894, which authorized it to extend its railway from the toll-house of the Crosswicks and Trenton Turnpike Company to the village of White Horse; but, after the formation of the Trenton Street Railway Company (the respondent here), that company, having become vested with all the rights, privileges and franchises of the consolidated company, and all its property and rights of way, proceeded to construct the extension of its railway from the said toll-house to White Horse. For the reason already stated this action on the part of the respondent was not authorized by the statute, and

this portion of its extension, consequently, is without a legal right to exist.

On the 8th day of December, 1898, the township committee of Hamilton township, on the petition of the directors of the respondent, the Trenton Street Railway Company, passed an ordinance granting to it a right to construct an extension of its railway from the village of White Horse, along the turnpike road of the Crosswicks and Trenton Turnpike Company, to the village of Yardville. An acceptance of this ordinance was filed with the secretary of state by the respondent within the thirty days required by the statute; and it is by virtue of this ordinance and its acceptance that the respondent claims to be entitled to have the chancellor define the mode in which the extension authorized thereby shall cross the steam railroad of the appellants. We do not think that this latter ordinance conferred upon the respondent any power to construct the so-called extension of its railway from the village of White Horse to Yardville. An extension of a railway, as the word signifies, is a prolongation of it from one of its *termini* to some other designated point. The legal terminus of the respondent's railway, at the time of the passage of this ordinance, was (and is now, so far as the proofs show) at Harrison avenue, and not at White Horse; and the grant contained in the ordinance of December 8th, 1898, was, consequently, not to construct an extension, but, rather, an independent railway. Such a grant was *ultra vires* the township committee of Hamilton township, and altogether nugatory.

Not only has the respondent failed to show that it has legally laid out its route over the appellants' railroad, and, as one of the steps to that end, that it had lawful power to lay out and construct its proposed extension, but, on the contrary, it has been made to appear affirmatively that it has no such power.

For this reason the decree appealed from should be reversed.

*For reversal*—VAN SYCKEL, GARRISON, GUMMERE, COLLINS, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VROOM—9.

*For affirmance*—None.