[Civ. No. 2937.   First Appellate District, Division One.—November 6, 1919.]

J. M. MOBLEY, Respondent, v. BOARD OF PUBLIC WORKS OF THE CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), et al., Appellants.

[1] MUNICIPAL CORPORATIONS—SAN FRANCISCO—INVESTIGATION OF PRIVATELY OWNED STREET RAILWAY SYSTEM—UNAUTHORIZED EXPENDITURE OF MUNICIPAL RAILWAY SYSTEM FUNDS.—An ordinance of the city and county of San Francisco appropriating a sum of money from the funds of the municipal railway system for the purpose of conducting an investigation as to the condition, availability, and value of a privately owned street railway system with a view to its possible purchase by said municipality, constitutes a departure from, and is at variance with, the provisions of article XII of the charter of said city and county, and is, therefore, void.

[2] ID.—EXTENSIONS AND IMPROVEMENTS—MEANING OF TERM.—The purchase of an entirely independent street railway system theretofore privately owned and operated does not constitute an extension and improvement of an already existing municipal railway system, within the meaning of the term "extensions and improvements" contained in section 16 of article XII of the San Francisco charter.

[3] ID.—INVESTIGATION OF STREET RAILWAY SYSTEM — NOT AN EXTENSION OR IMPROVEMENT.—The charter of San Francisco does not authorize the payment of money from the funds of the municipal railway system for the purpose of investigating the condition and availability of a part or the whole of another street railway system with a view to its purchase. Such an investigation may not fairly be held to constitute an "extension" or "improvement" of the municipal system. (Opinion of supreme court on denial of hearing.)

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a preliminary injunction. James M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

George Lull, City Attorney, Chas. S. Peery and M. T. Dooling, Jr., Assistant City Attorneys, for Appellants.

Connick & Kehoe for Respondent.

RICHARDS, J.—This is an appeal from an order of the superior court made after a hearing thereon granting a preliminary injunction against the defendants and appellants herein in an action instituted by the plaintiff, as a taxpayer of the city and county of San Francisco, to enjoin said defendants from incurring any expense or auditing or paying any moneys out of the municipal railway fund of the city treasury of said city and county of San Francisco under or by virtue of a certain ordinance of the board of supervisors of said municipality, entitled "Ordinance No. 4632, New Series," purporting to make an appropriation of fifteen thousand dollars from said funds for the purposes specified in said ordinance.

The ordinance provides in substance that whereas the city and county of San Francisco is the owner of a municipal street railway system, and is engaged in operating the same over and along certain streets of said municipality; and, whereas, the United Railroads of San Francisco, a corporation, is the owner of another street railway system, which is also being operated upon certain streets of said municipality not occupied by said municipal railway system; and whereas the acquisition by the city and county of San Francisco of the whole or a portion of said street railway system now owned by said private corporation would constitute a valuable extension and improvement of said existing municipal railway system, and that it is for the best interests of San Francisco that a thorough investigation be made by it as to the value of said privately owned street railway system in order to determine what portion, if any, thereof should be purchased by the said city and county as an extension and improvement of its existing street railway system, that

therefore the sum of fifteen thousand dollars is appropriated
from the funds of the municipal railway system for the
purpose of defraying the cost of an investigation as to the
condition, availability, and value of said privately owned
street railway system with a view to its possible purchase by
said municipality, which said investigation the board of
public works of said city and county are by the terms of
the ordinance authorized, empowered, and directed to make.
The ordinance in question further proceeds to repeal a cer-
tain prior ordinance of said municipality entitled ''Ordi-
nance No. 4538 thereof,'' declaring that the public interest
demands the acquisition of the street railways operated by
the United Railroads of San Francisco, and prescribing the
method of ascertaining the value thereof, and directing the
board of public works to make such valuation.

Under the provisions of the foregoing ordinance the board
of public works, according to the amended complaint of
the plaintiff herein, was about to proceed to expend the sum
of money provided in said ordinance from the funds of the
municipal railway system in making the investigation pro-
vided for in said ordinance, whereupon the said plaintiff
commenced this action and applied for the preliminary in-
junction which, upon hearing, the trial court granted herein.

Two questions are presented upon this appeal, and, as
stated by the briefs of the appellants herein, they are as
follows:

First: Does the charter of the said city and county of
San Francisco authorize the purchase out of the earnings
of the municipal railway of a part or the whole of another
street railway in the said city and county as an extension
or improvement of the municipal railway system now oper-
ated?

Second: Does the express power to appropriate the re-
ceipts of the municipal railway for extensions and improve-
ments of said railway imply the right to make expenditures
out of said receipts for the purpose of investigating the con-
dition and availability of a part or the whole of another
street railway as a proposed extension or improvement?

The solution of each of these questions requires an exam-
ination of the terms of the charter of the city and county
of San Francisco with relation to the ''Acquisition of Public
Utilities.'' Article XII of the said charter under the above

title is conceded to contain all that said charter provides with respect to that subject, and it embraces an elaborate and detailed scheme whereby it is proposed to carry into effect what is therein declared to be the purpose and intention of the people of the city and county of San Francisco that its public utilities shall be gradually acquired and ultimately owned by the said city and county.

Section 1 of said article prescribes that when the board of supervisors by ordinance shall determine that the public interest or necessity demands the acquisition or completion of any public utility or utilities by the city and county, or whenever the electors shall petition the board of supervisors as provided in section 3 of the article for the acquisition of any public utility or utilities, the board of supervisors must procure from the board of public works, through the city engineer, plans and estimates of the cost of original construction and completion by the city and county of such public utility or utilities.

Section 2 of said article provides that before submitting propositions to the electors for the acquisition by original construction or condemnation of public utilities the board of supervisors must solicit and consider offers for the sale to the city and county of existing utilities, in order that the electors may have the benefit of securing the same at the lowest possible price thereof.

Section 3 of said article provides the procedure to be undertaken by the board of supervisors whenever a petition signed by the electors of the city and county of San Francisco equal to a certain percentum thereof shall be presented to the board of supervisors, favoring the acquisition of any designated public utility or utilities.

Section 4 of said article provides for the submission to electors of propositions for the acquisition of public utilities at a special election. The succeeding sections of said article, up to section 13 thereof, prescribe the method of calling such special elections and for the matters which must be determined thereat, including the question of the issuance of bonds for the acquisition of such public utilities, as may be favored by the vote of the electors at such election, and for the sale of such bonds, and for the method of payment of the same by the levy of municipal taxes.

Section 16 of said article provides as follows: "1. Whenever any public utility shall be operated by the city and county, the receipts from such utility shall be paid daily into the city treasury, and maintained in a special fund set aside for such utility. The supervisors may, from time to time, make appropriations from such funds for the following purposes:

"(a) For the payment of the operating expenses of such utility;

"(b) For repairs and reconstruction;

"(c) For payment of interest and sinking fund on the bonds issued for the acquisition or construction of such utility;

"(d) For extensions and improvements;

"(e) For a reserve fund."

[1] It is the contention of the respondent herein that the foregoing provisions of article XII of the charter of the city and county of San Francisco, other than section 16 thereof, prescribe the mode for the exercise of whatever powers the board of supervisors, or other officials of said city and county, possess in the matter of the expenditure of its public funds for the acquisition of public utilities either by the original construction thereof by said municipality, or by the condemnation and purchase of already existing privately owned properties in the nature of public utilities; and that the mode therein prescribed is the measure of the powers of the said officials of the municipality; and that this being so, the ordinance which is assailed in this proceeding must be held to be void as a departure from and at variance with the provisions of said article.

We are of the opinion that this contention must be sustained. The ordinance in question, as will be seen by its terms, does not purport to authorize the expenditure of the sum of money provided therein from the funds of the municipal railway system for the acquisition of any public utility. It merely proposes that such funds shall be expended for the purpose of conducting an investigation by the board of public works as to the advisability and availability of the acquisition by purchase of the United Railways system. If the result of that investigation should be a determination by said board in favor of the advisability and availability of such purchase, and should thus be taken to be a step in

the direction of making the same, then it is apparent that such step is unwarranted by the provisions of said article of the charter, for the reason that the preliminary ordinance determining that the public interest or necessity demands the acquisition of such system has not been adopted by the board of supervisors. On the other hand, if it is conceded that as the result of such expenditure and consequent investigation provided for in said ordinance the board of public works should determine against the advisability or availability of the purchase and acquisition of such privately owned railway system, then it follows of necessity that such expenditure would be one made outside of the provisions and limitations of the article of the charter in question.

[2] The only escape from these conclusions suggested by the appellants herein is that such an expenditure of the funds of the municipal railway system as is sought to be authorized by the ordinance in question is permissible under section 16 of said article XII of said charter. The section as above-quoted provides that whenever any public utility shall be operated by said municipality the receipts derived therefrom shall be paid daily into the city treasury, and shall be maintained in a special fund set apart for such utility, and that the supervisors may from time to time make appropriations from such funds for certain specific purposes prescribed in said section. One of these is specified in subdivision (d) thereof to be ''for extensions and improvements''; and it is the contention of the appellants herein that the acquisition of the privately owned utility above referred to would constitute an extension and improvement of the already existing municipal railway system. The answer to this contention is twofold: First, the expenditure provided for in said ordinance is not to be made in the acquisition of said privately owned railway system, and hence cannot be said to be an expenditure for the extension and improvement of the existing municipal railways system; and, second, that the term ''extensions and improvements'' contained in said section cannot be so extended as to include the purchase of an entirely independent street railway system theretofore privately owned and operated upon other streets and thoroughfares and in other sections of said municipality than that now occupied by the municipal railway system thereof. It is evident that it

could not have been the intention of the framers of the charter, by section 16 of article XII thereof, to so extend these terms, since the article itself in the preceding sections thereof had already provided the precise method by which privately owned railway systems might be converted into municipally owned public utilities upon the initiative either of the electorate of said municipality or of the board of supervisors thereof. The term "extensions and improvements" must have reference to such extensions of or improvements in the service or operation of such public utility as are the natural and necessary incidents of the operation of any public service agency in a growing city, but not to the taking over of privately owned systems which, while these might have the effect of extending and improving the already owned and operated public utility, would involve in their acquisition expenditures far in excess of the receipts and revenues of such municipal system, and entail the creation of obligations on the part of such municipality exceeding even the original cost of its existing system.

It follows that the expenditure provided for in said ordinance was unauthorized by the provisions of the charter, and hence that the preliminary injunction restraining the same was proper.

The order is affirmed.

Beasly, P. J., *pro tem.*, and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 5, 1920, and the following opinion then rendered thereon:

THE COURT.—[3] Without regard to any other question discussed in the opinion of the district court of appeal, we are satisfied that the charter of San Francisco, as now written, does not authorize the payment of money from the funds of the municipal railway system for the purpose of investigating the condition and availability of a part or the whole of another street railway with a view to its purchase. The purposes for which expenditures from such fund can be made are carefully specified in section 16, article XII, of the charter, which, we think, excludes any

such expenditure as here proposed. Such an *investigation* may not fairly be held to constitute an "extension or improvement" of the municipal system. We express no opinion on the other matters involved.

The application for a hearing in this court is denied.

*Angellotti,* C. J., *Shaw,* J., *Lawlor,* J., *Wilbur,* J., and *Lennon,* J., concurred.