[S. F. No. 12823. In Bank.—May 7, 1928.]

REUBEN G. HUNT, Appellant, v. THOMAS F. BOYLE, as Auditor, etc., et al., Respondents.

Harry G. McKannay for Appellant.

John J. O'Toole, City Attorney, Dion R. Holm, Assistant City Attorney, and Frank L. Fenton for Respondents.

RICHARDS, J.—This appeal is by the plaintiff, alleging himself to be a taxpayer, from a judgment of the superior court, in and for the city and county of San Francisco, refusing to enjoin the board of public works of said municipality from entering into a contract for the construction of

certain municipally owned railway lines therein, and also to restrain the auditor from certifying that there are funds available in the municipal treasury to meet the payments to become due under such proposed contract or to audit such payments as the same become due. The facts are not seriously in dispute. In the year 1909 the city and county of San Francisco, by an ordinance duly adopted by its board of supervisors, undertook to commit its people to the policy of public ownership, control, and conduct of a system of street railways upon and along certain of its principal streets and extending from its business center outward in several stated directions into its main residential districts and suburbs. The ordinances declaring this purpose and providing for the submission of this policy to popular vote were proposed and adopted under the provisions of article XII of the charter of the city and county of San Francisco in the opening clause of which "It is hereby declared to be the purpose and intention of the people of the City and County of San Francisco that its public utilities shall be gradually acquired and ultimately owned by the City and County." Under this and the succeeding provisions of said article the people of San Francisco approved the foregoing policy as applied to the creation, operation, and control of railway lines upon and along the public streets designated in said ordinances by providing for a bond issue for the cost thereof and in due course the municipally owned and operated railway system thus provided for began to function. In the year 1913, due doubtless in part at least to the plan of the people of San Francisco to create and conduct the Panama-Pacific International Exposition and to the location thereof, certain other ordinances were adopted by the board of supervisors determining that the public interest and necessity demanded the acquisition and construction of "a system of municipal street railways commencing at certain points on Market street and extending along certain other designated streets to defined terminals and providing for the submission of the matter of these additions to the already owned and operated system to popular vote in the form of bond issues to cover the cost of construction. These ordinances also received a vote of popular sanction and the municipally owned railways thus provided for were constructed and put in operation. An examination of the maps which

have been submitted to our inspection carries conviction that these several radiating railway lines though built at different times and though in each instance at their inception submitted to public approval and as to their cost made possible by separate bond issues, constitute in actual operation and practical effect but one municipally owned and operated railway system, and as such subject in its entirety to all of the provisions of the aforesaid article of the charter. Under the provisions of section 16 of said article XII of the charter it is provided that:

"1. Whenever any public utility shall be operated by the City and County, the receipts from such utility shall be paid daily into the city treasury, and maintained in a special fund set aside for such utility. The Supervisors may, from time to time, make appropriations from such funds for the following purposes:

(a) For the payment of the operating expenses of such utility;

(b) For repairs and reconstruction;

(c) For payment of interest and sinking fund on the bonds issued for the acquisition or construction of such utility;

(d) For extensions and improvements;

(e) For a reserve fund."

Pursuant to the foregoing provision the board of supervisors of said municipality in the year 1915 adopted an ordinance creating a so-called "Depreciation Fund" through the appropriation and setting apart of eighteen per cent of the gross passenger revenues of "the municipal railway" for certain purposes designated therein. It is true that in the designation of such purposes in said ordinance the board did not expressly embrace the item of extensions among the purposes to which when necessary and available such sequestrated funds were to be applied; and that this being so it might well be that the rule governing the disposition of the moneys accumulated and accumulating in said "Depreciation Fund" must first have been devoted to the expressed objects in said ordinance; but it would not follow therefrom that the moneys thus collected in said fund when the aforesaid expressed purposes of its creation were provided for might not be applied to "extensions" in the municipal railway system when such were found to be needful, since the

section of the charter in question does expressly provide that "extensions" are to be one of the purposes for which said "Depreciation Fund" is required to be set apart. In the year 1926 the board of supervisors, by an ordinance duly adopted, undertook to re-create the former depreciation fund under the name of "New Depreciation Fund," the only practical change in which apparently was that of transferring from the accumulations in said fund certain specific amounts to purposes to which under the said charter provision they might be devoted, and in otherwise lessening the amount of the annual deposit to be placed to the credit of such fund. It was not shown upon the trial of this action, nor is it here seriously contended, that there is not at present in the form of accumulations in the aggregate of said depreciation fund sufficient money after all of the purposes which should be given precedence in the distribution thereof have been satisfied to permit the devotion of the money sought to be applied to the purposes sought to be enjoined in this proceeding, provided such purposes are otherwise lawful and being lawfully undertaken.

In the month of March, 1927, the board of supervisors of the city and county of San Francisco passed, and the mayor duly approved, a so-called "Declaratory Ordinance" relating to "Municipal Railway extensions." By the express terms of this ordinance it was determined and declared that the public interest and necessity demanded the acquisition or construction of "a number of extensions to the existing municipal street railway system along public streets, private rights of way and through tunnels being constructed by the municipality, said extensions to be made from the existing municipal railway track" at various specified points thereon, among which was the specification, "From the municipal railway tracks on Market street at Duboce avenue through the Sunset-Duboce tunnel into the Sunset District, and through the Sunset District to a terminal near Ocean Beach, with connecting cross-town service west of Twentieth avenue between said extension and the existing municipal line on Taraval street." Numerous other so-called extensions were provided for in this ordinance and the board of public works was directed to procure through the city engineer and file with the board of supervisors plans and estimates of cost of original construction and completion "of the ex-

tensions to the municipal street railways as herein described.'' Upon the coming in of the report of the board of public works pursuant to the foregoing direction it was determined by the board of supervisors that the cost of making and providing for the equipment of all of the extensions to the municipal railway system enumerated in its previous ordinance would be too great to be paid out of the ordinary annual revenues of the municipality or out of other available funds thereof devotable to such purposes and that a bond issue would be required. The board of supervisors accordingly by proper ordinance provided for and duly called a special election to be held for the purpose of submitting to the voters of San Francisco the proposition of a bond issue in the sum of $4,700,000 for the making of the proposed municipal railway extensions. Upon the holding of said election, however, the proposed bond issue was defeated by its failure to receive the requisite two-thirds majority of the vote cast, although a large majority of the voters favored the proposition. Thereafter and during the month of September, 1927, the board of public works of the city and county of San Francisco, proceeding upon the theory that the construction of the so-called Judah Street and Duboce Tunnel addition to the already existing municipal railway system of said municipality was such an extension of said railway system as was within the contemplation of the provisions of said article XII of the charter and that the power to proceed to construct such extension had been entrusted to said municipal body under the previous acts and resolutions of the board of supervisors and that there had been or were to be provided and set apart, out of the depreciation fund above referred to, a sufficiency of funds available for the making of said ''extension,'' proceeded to award a contract to Eaton & Smith, a firm of contractors, for the construction of said extension on and along the defined route at a preliminary cost of $248,264. The total estimated cost of said ''extension,'' according to the estimates thereof theretofore made by the said board of public works, will be approximately $800,000. The available funds to make and complete said extension and the necessary equipment thereof have been or are to be provided out of said ''Depreciation Fund,'' through the creation of such fund as stated above in the year 1915 and through an appropriation

by the board of supervisors of $500,000 out of said fund made in the year 1921, when the proceedings for the construction of said addition to the then existing municipal railway system were first initiated by said board; and by the subsequent appropriation of the additional sum of $200,000 made by said board of supervisors in the same year; and by the still further appropriation of the sum of $116,000 from the same fund made by said board in 1927. The trial court found that the proposed construction of the Judah Street and Duboce Tunnel addition to the already existing system of municipal street railways was an extension of said system within the purport and meaning of said section XII of the charter of said municipality, and further found that the foregoing appropriation, aggregating the sum of $816,000, from the said depreciation fund had been duly and legally made, and that the said aggregate sum was available for the making of said extension; and that the contract therefor with said firm of contractors had been lawfully entered into by said board of public works of said municipality; and based upon such findings of fact and conclusions of law the trial court by its judgment denied the plaintiff the relief demanded in his complaint; whereupon he has taken and prosecutes this appeal.

The main and practically the controlling contention of the appellant here is that the proposed addition to the municipally owned railways of the city and county of San Francisco is not an "extension" thereof, but is in fact another municipally owned railway which it is proposed to add to the several already existing municipally owned railways of the municipality; and that this being so the procedure provided by section XII of the charter thereof for the creation or acquisition of a new public utility through the submission of the question of its creation or acquisition to the vote of the people must be pursued; and that such procedure not having been pursued in respect to the construction of the railway line in question, the public officials who are proceeding or threatening to make or to approve such construction, or to devote to it the funds of the municipality from whatever source derived, should have been enjoined.

We are unable to agree with the contention of the appellant herein that the proposed construction of the Judah

Street and Duboce Tunnel addition to the already existing system of municipally owned railways of the city and county of San Francisco is not to be regarded as an extension thereof within the intent and meaning of article XII of the charter thereof. When the people of San Francisco adopted the said provision in said charter relating to the acquisition of public utilities they doubtless had in contemplation the creation or acquisition of a system of municipally owned railways which should not only measurably meet the needs of travel and transportation within certain areas of the then existing city, but which should also be made responsive to the increasing needs in the way of travel and transportation of the growing and expanding city; and while it may be true that the governing body of the municipality saw fit upon those earlier occasions when such needed enlargements of the service of its municipal railways were in contemplation to submit the question to popular vote in the form of proposed bonds to meet the cost of their construction, it does not follow that those enlargements of the system were not in truth and in fact extensions thereof which, having been approved and completed by whatever method, became merely an enlargement and extension of a single and unified system, and as such have been managed, controlled, and operated since their completion. The present proposed enlargement of the existing municipally owned railway system of the municipality is evidently, actually and in point of practical conduct and operation intended to similarly blend into and form a part of the system and by so doing to form an extension of the facilities of such system corresponding and responsive to the expanding areas of improvement and of population in and about the growing city. The extension when made will branch forth from the designated streets of said city which are already occupied with municipally owned railway lines and will be so connected with such existing lines that the same cars and the same system and method of operation will be employed on the extended as are already employed on and along the existing lines, while travel will move and pass from the one to the other as travel is wont to do over a single and unified line of railway, regardless of differences in the time or method of creation of its component parts. There is no merit in the contention of the appellant that the proposed addition to the municipally

158

owned railway system of the municipality is not to be deemed an "extension" because it does not proceed from existing termini thereof. A system of street railways in any large city is of necessity a radiating system, responding in its enlargements to the trend of population and taking off from original laterals at such points of contact as the economics of construction require. It is therefore our conclusion that the proposed construction of the so-called Judah Street and Duboce Tunnel enlargement of the existing system of municipally owned railways in said municipality was properly treated and stated by the board of public works thereof to be an extension of said system, and that the trial court was correct in so holding in the instant case. This being so, the only remaining question would be as to whether the funds already provided for and sequestered in the so-called "Depreciation Fund" derived from the earnings of said municipal railway system under the requirements of section 16 of article XII of the charter are to be held available for the construction of such extension. Said section of the charter, as we have already seen, by its express terms set forth the purposes for which the funds of the public utility were required to be accumulated. Among these purposes is that of "extensions." It is not seriously contended upon this appeal that if the construction of said new railway line or lines constitute an extension of the already existing system of municipal railways from the earnings of which this specific fund has been accumulated it may not, if other demands upon it have been satisfied, be drawn upon for the making of such extensions as the one in question here. The contention of the appellant in that regard is that since the board of supervisors did not in the original ordinance creating such fund embrace in its purposes that of "extensions" its residue is not now available for that purpose. But, as already stated herein, we think that the provisions of the charter and not the ordinance of the board is to govern the uses to which said funds when once created shall from time to time be applied.

In conclusion it may be stated that we do not consider that any views expressed by this court in the case of *Uhl* v. *Badaracco,* 199 Cal. 270 [248 Pac. 917], or by the district court of appeal in *Mobley* v. *Board of Public Works,* 44 Cal.

App. 167 [186 Pac. 412], are out of harmony with the views expressed in the foregoing opinion.

The judgment is affirmed.

Shenk, J., Preston, J., Waste, C. J., Seawell, J., Langdon, J., and Curtis, J., concurred.