652

[Civ. No. 9167. First Appellate District, Division Two.—July 12, 1934.]

W. E. MANN, Appellant, v. THE CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation) et al., Respondents.

Howard M. Jones and Louis R. Mercado, Jr., for Appellant.

John J. O'Toole, City Attorney, and Dion R. Holm, Assistant City Attorney, for Respondents.

SCHMIDT, J., *pro tem.*—In 1933 appellant as a taxpayer filed in the superior court "his petition for writ of mandate" in which he set forth, among other things, that in 1918 the respondent City and County of San Francisco inaugurated as part of its municipal transportation system an auto bus service known and designated as "bus line No. 2", describing its route, claiming that he was a patron thereof, and that said bus line furnished sole and exclusive means of transportation and public conveyance to petitioner and other residents in the City and County of San Francisco. The area described provided the sole and exclusive transportation upon and along the ocean beach in said City and

County of San Francisco; that said bus line was necessary to the public convenience; that on the third day of January, 1933, the respondents Public Utilities Commission and respondent Cahill, the duly appointed manager of public utilities in the City and County of San Francisco, ''wholly discontinued and abandoned the bus line transportation service in the area . . . described, discontinuing and abandoning part of the public utility system owned by the City and County of San Francisco and although often requested to continue and/or to replace said transportation service . . . ever since have refused and now refuses to operate busses or any other instruments of transportation over that part of the utilities system or upon the route herein above designated 'bus line No. 2'.'' The prayer of the petition was for an alternative writ to issue directing the commission to restore the municipal transportation service designated as bus line No. 2 or show cause at a specified time why they had not done so. To this petition respondents interposed a general demurrer which the court sustained without leave to amend and entered judgment for respondents, from which judgment appellant appeals. The petition does not charge that the commission acted arbitrarily nor does it allege any fraud.

The single question for decision is: Do the powers conferred and the duties imposed upon the Public Utilities Commission of the City and County of San Francisco by its charter authorize and empower that commission to discontinue or abandon part of its transportation service? The freeholders' charter of the City and County of San Francisco after providing for a Public Utilities Commission by section 121 provides ''general powers and duties of the commission'' as follows: ''The public utilities commission shall have charge of the construction, management, supervision, maintenance, extension, operation, and control of all public utilities and other properties used, owned, acquired, leased or constructed by the city and county, . . . for the purpose of supplying any public utility service to the city and county and its inhabitants . . . The commission shall locate and determine the character and type of all construction and additions, betterments, and extensions to utilities under its control, and shall determine the policy for such construction or the making of such additions, better-

ments and extensions from the public funds under its jurisdiction . . . ''

It is true, as contended by appellant, that *Hunt* v. *Boyle*, 204 Cal. 151, at page 152 [267 Pac. 97], is authority that the several radiating railway lines constituting the municipal transportation system of the City and County of San Francisco, although built at different times, ''constitute in actual operation and practical effect but one municipally owned and operated railway system''. We cannot agree with his argument that by reason thereof the Public Utilities Commission could not abandon or discontinue a portion of that transportation system as it did, for by the assumption of the power to abandon a portion of that system it in effect was the assumption of the power to abandon the whole of that system. Nor do we agree with his contention that before an abandonment is had it will be necessary for the board of supervisors by ordinance to determine that the public interest or necessity demanded such abandonment. The case of *Hunt* v. *Boyle, supra,* is quite analogous to the case under consideration in this—that it also involved a portion of the transportation system of San Francisco, namely, the Judah Street and Duboce tunnel addition, which will be referred to hereafter as the addition. That at the time of the facts involved the then charter of the City and County of San Francisco gave to the then board of public works, with reference to municipally owned public utilities, substantially the same powers as are now by section 121 of the 1932 charter given the Public Utilities Commission. In *Hunt* v. *Boyle, supra,* the question was raised as to whether said addition was a new utility which would require, as provided by the charter, an ordinance of the board of supervisors determining that the public interest and necessity demanded the construction of this addition as an additional public utility or was it merely an ''extension'' of the system already owned and operated. The Supreme Court held that it was merely an extension.

Another question presented in that case was: Did the board of public works act within its powers when it proceeded to let a contract for the work of said addition without first obtaining an ordinance of the board of supervisors providing for the work or some authority from the board of supervisors to proceed to construct such addition?

The Supreme Court held that inasmuch as it was merely an extension it was within the power of the board of public works to provide for the work and let a contract therefor and that there was not needed any ordinance or authority from the board of supervisors.

We believe that the people of the City and County of San Francisco when by the aforementioned section 121 of their charter conferred upon the Public Utilities Commission the "management, supervision, maintenance, extension, operation and control of all public utilities" and "the commission shall locate and determine the character and type of all . . . extensions to utilities under its control and which determine the policy for . . . the making of such . . . extensions from the public funds under its jurisdiction", they intended to give to such commission the sole and exclusive "control" and "management", including the power to abandon any portion of such utility. The words used in such section 121 are certainly broad enough to carry such interpretation.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.