PRESSMAN ET AL. *v.* BARNES, DIRECTOR
OF TRAFFIC ET AL.

[No. 140, October Term, 1955.]

548

*Decided April 10, 1956.*

*Motion for rehearing filed April 24, 1956, denied May 2, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Hyman A. Pressman* for the appellants.

*Hugo A. Ricciuti* and *Francis X. Gallagher, Assistant City Solicitors of Baltimore,* with whom were *Thomas N. Biddison, City Solicitor, Edwin Harlan, Deputy City Solicitor, C. Ferdinand Sybert, Attorney General of Maryland, Norman P. Ramsey, Deputy Attorney General,* and *Stedman Prescott, Jr., Assistant Attorney General,* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was instituted in the Circuit Court of Baltimore City by Hyman A. Pressman, a citizen and taxpayer of Baltimore, against Henry A. Barnes, Director of Traffic, and the Mayor and City Council of Baltimore to invalidate (1) portions of Ordinance 786, approved July 14, 1953, creating the office of Director of Traffic, and (2) an administrative regulation promulgated by the Director of Traffic prescribing speed limits.

Under the Uniform Declaratory Judgments Act, Code 1951, art. 31A, sec. 2, any person whose rights, status or other relations are affected by a statute or municipal ordinance may have determined any question of construction or validity arising under the statute or ordinance and obtain a declaration of rights, status or other legal relations thereunder. *Pressman v. State Tax Commission,* 204 Md. 78, 102 A. 2d 821; *Kirkwood v. Provident Savings Bank,* 205 Md. 48, 106 A. 2d 103. The law is also established that a taxpayer may invoke the aid of a court of equity to restrain the action of a public official or an administrative agency when such action is illegal or *ultra vires* and may injuriously affect the taxpayer's rights and

property. *Masson v. Reindollar,* 193 Md. 683, 69 A. 2d 482; *Reed v. McKeldin,* 207 Md. 553, 558, 115 A. 2d 281.

The ordinance in question provides that the Director of Traffic shall be appointed by the Mayor of Baltimore, and that he may adopt such rules and regulations as he may deem necessary for the proper transaction of his business.

Section 2 of the ordinance enumerates the Director's powers, including the power to designate through highways, to install traffic signs, pylons, and channels, and to approve or disapprove the location of bus stops.

Section 2(I) empowers the Director to "have and exercise all control over traffic that the Police Commissioner for the City of Baltimore had prior to the time this ordinance becomes effective, including the power to establish "No Parking" spaces; * * *."

Complainant contended that this provision conflicts with the provision of the Baltimore City Charter that no ordinance or act of any municipal officer shall conflict or interfere with the powers of the Police Commissioner.

Section 2(K) empowers the Director to "adopt and promulgate rules, regulations, orders and directives relating to, or in connection with, the movement of vehicular and pedestrian traffic in the City of Baltimore. * * *"

Complainant attacked this provision on two grounds: (1) that it unlawfully delegates legislative functions to an administrative official, and (2) that it does not provide proper standards for the guidance of the Director in adopting his rules, regulations, orders and directives.

The administrative regulation in question was promulgated by Henry A. Barnes, Director of Traffic, to become effective on August 9, 1955. Complainant's chief objections to the regulation were: (1) that the legislative function of setting speed limits cannot be lawfully delegated by the Mayor and City Council, and (2) that the regulation sets the speed limits on all of the streets of the City, including those which have been designated as a part of the State or Federal highway system or an extension thereof.

Complainant also objected to one of the penalty provisions on the ground that it conflicted with the Maryland Motor Vehicle Law. Code 1951, art. 66½, sec. 176(g). He further complained that the regulation was self-contradictory in that in some parts it refers to the speed limits as being *prima facie,* while in another part it refers to them as conclusive.

Complainant alleged that the Director of Traffic, unless restrained by the Court, would illegally expend many thousands of dollars of the City's revenues for the erection of signs and other devices; that the erection of these signs would inform motorists of speed limits which are not legally correct and would tend to cause accidents and subject the Mayor and City Council to damage suits, thereby causing complainant and other taxpayers to suffer irreparable loss and damage.

Complainant prayed for a decree (1) declaring the assailed portions of the ordinance and the Traffic Director's regulation invalid, and (2) enjoining defendants from expending public funds for the erection of signs or other devices in pursuance of the ordinance and regulation.

On August 23, 1955, the Circuit Court passed an order permitting 44 other citizens and taxpayers to be made parties plaintiff to the proceeding.

At the trial of the case Ernest W. Bunting, Associate Engineer of the Traffic Division of the State Roads Commission, testified that he did not know of any Federal highway that reached the boundary line of Baltimore, and that he did not know whether there were any extensions of the State highway system within the City, although he admitted that "State and Federal numbered highways came up to the boundaries of the City and took up at the other side of the City."

Mr. Barnes testified that the City, in an agreement with the State Roads Commission on June 2, 1955, agreed to mark the streets in the City with the State and Federal numerals. He surmised that there was no extension of the State highway system into the City for the reason

that he had obtained permission to change the location of any of these signs.

On September 30, 1955, the Court entered a decree declaring that the ordinance and the Traffic Director's regulation are valid, with the exception of the provisions in the regulation as to minimum fines and presumptions as to guilt, which are invalid. Appeal was entered by complainants from that decree.

### I.

The first contention of appellants is that the power to set speed limits is a legislative power, and the Mayor and City Council cannot lawfully delegate it to an administrative official.

It is a fundamental principle that, except when authorized by the Constitution, the Legislature cannot delegate the power to make laws to any other authority. As the lawmaking function, under the doctrine of separation of powers, is assigned exclusively to the Legislature, any attempt to abdicate it in any particular field is unconstitutional. This principle is not violated, however, where a municipal corporation is vested with powers of legislation as to matters of local concern.

This Court has recognized that the same restrictions which rest upon the Legislature as to the delegation of legislative powers conferred upon it by the Constitution rest upon a municipal corporation as to powers granted to it by the Legislature. *City of Baltimore v. Wollman,* 123 Md. 310, 315, 91 A. 339. But it is now accepted that a municipal corporation may delegate to subordinate officials the power to carry ordinances into effect, even though such delegation requires the exercise of a certain amount of discretion which may be regarded as part of the police power, if such discretion is guided and restrained by standards sufficient to protect the citizen against arbitrary or unreasonable exercise thereof. *Tighe v. Osborne,* 149 Md. 349, 360, 131 A. 801, 43 A. L. R. 819.

In recent years the increasing multiplicity and complexity of administrative affairs has made it increasingly

necessary for municipal councils to entrust important functions to administrative boards and officials. Zoning cases are an illustration of the trend toward broader delegation of powers to administrative officials. In *Tighe v. Osborne*, 150 Md. 452, 457, 133 A. 465, 467, 46 A. L. R. 80, the Court of Appeals sustained the right of the Mayor and City Council of Baltimore to delegate to the Zoning Commissioner the power to determine whether "buildings or the proposed use of them would menace the public security, health, or morals." Less than a year ago this Court, in an opinion by Judge Henderson in *Givner v. Com'r of Health of Baltimore City*, 207 Md. 184, 113 A. 2d 899, observed that even more flexible standards must be permitted in the domain of public health than in zoning, redevelopment, and public education.

On account of the tremendous growth of traffic and the need for constant supervision of traffic control, it has also become increasingly imperative for city councils in metropolitan centers to delegate to traffic experts a reasonable amount of discretion in their administrative duties. New traffic problems are constantly arising, and therefore to require the enactment of an ordinance to cover each specific problem would be likely to result in widespread delays and even serious hazards. It is obvious that there is a practical necessity for expert and prompt judgment in the application of the concept of public safety to concrete situations, and that the standards for administrative officials in the domain of public safety should be at least as flexible as in the domain of public health. Of course, the question whether a particular regulation of an administrative official is arbitrary or unreasonable, or not fairly within the scope of the delegated power, is subject to judicial review; but if the matter is fairly debatable, the court should not substitute its judgment for the judgment of the administrative official who is charged with the duty of promulgating the regulation.

In *Taylor v. Roberts*, 84 Fla. 654, 94 So. 874, the Supreme Court of Florida held that the grant of authority

to the Chief of Police of Jacksonville to regulate traffic at any congested part of the city was not an unlawful delegation of legislative power.

In *City of Cleveland v. Gustafson,* 124 Ohio St. 607, 180 N. E. 59, 79 A. L. R. 1325, the Supreme Court of Ohio held that an ordinance authorizing the Director of Public Safety to establish safety zones was within the power of the City Council.

In *Borum v. Graham,* 4 Cal. App. 2d 331, 40 P. 2d 866, an ordinance of the City of Pasadena authorizing the Chief of Police to mark crosswalks for pedestrians was held valid.

In *Staley v. Vaughn,* 92 Colo. 6, 17 P. 2d 299, the Supreme Court of Colorado held that, while the power to provide for the designation of "through traffic" streets is legislative, the designation of such streets is administrative action based upon an exercise of discretion.

In *Gould v. Western Dairy Products, Inc.,* 12 Cal. App. 2d 188, 55 P. 2d 274, 276, it was held that the City Council of Burbank could delegate to the Board of Police Commissioners the power to determine which intersections should be designated as boulevard stop intersections.

In view of present-day public necessity and in accordance with the modern trend of judicial decisions, we hold that the Mayor and City Council may lawfully delegate to the Director of Traffic the power to promulgate rules setting speed limits on the streets of Baltimore, and that the Director may make any such rules which are reasonable and do not conflict with Acts of the Legislature.

## II.

There is likewise no merit in the contention that the ordinance fails to prescribe sufficient standards for the guidance of the Director of Traffic in adopting rules and regulations.

The general rule is universally accepted that a statute or ordinance which vests in administrative officials an arbitrary discretion with respect to lawful businesses or professions without prescribing a uniform rule of action is unconstitutional. The reason for the rule is that the

failure to prescribe standards for the exercise of authority might result in arbitrary discriminations beyond the proper scope of the police power. *Commissioners of Prince George's County v. Northwest Cemetery Co.,* 160 Md. 653, 656, 154 A. 452.

Generally, a statute or ordinance vesting discretion in administrative officials without fixing any standards for their guidance is an unconstitutional delegation of legislative power. But we also hold, as a qualification of the general rule, that where the discretion to be exercised relates to police regulations for the protection of public morals, health, safety, or general welfare, and it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative officials to carry out the legislative will, legislation delegating such discretion without such restrictions may be valid. *Thompson v. Smith,* 155 Va. 367, 154 S. E. 579, 71 A. L. R. 604; *American Baseball Club of Philadelphia v. City of Philadelphia,* 312 Pa. 311, 167 A. 891, 92 A. L. R. 386, 410; *Matz v. J. L. Curtis Cartage Co.,* 132 Ohio St. 271, 7 N. E. 2d 220. It is recognized that it would not always be possible for Legislature or City Council to deal directly with the multitude of details in the complex situations upon which it operates. *Comptroller of Treasury v. M. E. Rockhill, Inc.,* 205 Md. 226, 232, 107 A. 2d 93. The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases.

In *Petrushansky v. State,* 182 Md. 164, 32 A. 2d 696, this Court had under consideration an ordinance requiring that dwellings be kept "clean and free from dirt, filth, rubbish, garbage and similar matter, and free from vermin and rodent infestation and in good repair, fit for human habitation." The Commissioner of Health was empowered to adopt all such rules and regulations that he might deem necessary for the enforcement of the

ordinance and to issue orders compelling compliance with its provisions. The ordinance was held valid.

In *Ashland Transfer Co. v. State Tax Commission,* 247 Ky. 144, 56 S. W. 2d 691, 87 A. L. R. 534, the Court of Appeals of Kentucky held that legislative power was not delegated unconstitutionally to the State Highway Commission and to the various County Judges of the State by a statute empowering the Commission with reference to State roads, and County Judges with reference to County roads, to reduce the maximum limit of loads and speed established by it for motor trucks, whenever in the judgment of those agencies any road, bridge, or culvert shall be liable to be damaged or destroyed by trucks of a greater weight or speed than that fixed by them.

### III.

Appellant further contends that the Traffic Director's regulation setting speed limits violates Section 6(24) of the Baltimore City Charter, 1949 Ed., which provides that "no ordinance of the City or act of any municipal officer shall conflict, impede, obstruct or interfere with the powers of the Police Commissioner."

The Charter of Baltimore, which was adopted in 1918 under the Home Rule Amendment of the Constitution of Maryland, conferred upon the Mayor and City Council the power to regulate the use of streets. It was accordingly held by this Court in *State v. Stewart,* 152 Md. 419, 137 A. 39, that the Act of the Legislature authorizing the Police Commissioner of Baltimore to make rules and regulations for the control of traffic, Laws 1924, ch. 436, was invalid, as the Home Rule Amendment provides that no local law shall be enacted by the Legislature on any subject covered by the express powers granted.

We must reject appellants' contention in view of the fact that the Home Rule Amendment provides that after the adoption of a Charter, the Mayor and City Council of Baltimore shall have full power to enact local laws of said City, including the power to repeal or amend local laws enacted by the General Assembly, upon all matters

covered by the express powers granted. Md. Constitution, art. 11A, sec. 3.

Moreover, it has been held by this Court that the provision in the Charter of Baltimore that no ordinance shall interfere with the powers of the Police Commissioner relates to the Commissioner's executive powers, and does not restrict the City's power to legislate on matters within the scope of the police powers, even though such legislation may reduce his duties as to local law enforcement. *G. I. Veterans' Taxicab Ass'n v. Yellow Cab Co.*, 192 Md. 551, 65 A. 2d 173, 8 A. L. R. 2d 568.

### IV.

Appellant finally contends that the City has no power to regulate the speed of vehicles on any street which is a part of the State or Federal highway system or an extension thereof.

By Chapter 43 of the Laws of 1955, the Legislature added a new section to the Motor Vehicle Law of Maryland, which took effect as an emergency measure upon its approval by Governor McKeldin on February 24, 1955, granting additional powers to cities, towns and villages as follows:

> "Notwithstanding any other provision of this Article, the appropriate authorities of any incorporated city, town or village are authorized and empowered to regulate the speed of vehicles on any road, street, lane or alley which is within their respective corporate limits and which has not been designated or maintained as a part of the State or Federal highway system or an extension thereof." Code Supp. 1955, art. 66½, sec. 151A.

The City says, however, that it has no streets which are "designated or maintained as a part of the State or Federal highway system or an extension thereof." Appellants maintain, on the contrary, that, while it may be true that the State does not maintain any of the streets in Baltimore, a number of the streets in that City are a

part of the State highway system or at least extensions of that system.

There was a difference of opinion as to whether the road map prepared by the State Roads Commission indicates that some of the streets in Baltimore are extensions of the State highway system. The map designates State highways by certain types of lines and numerals and U. S. highways by other types of lines and numerals. The City maintains that the map does not designate these streets as an extension of the State or Federal highway system, there being no lines or numerals indicating State highways and U. S. highways within the City lines. On the other hand, appellants point out that these highways do not stop at the City line, but proceed as continuations of the State and Federal highways systems. In any event, there is significance in the fact that signs have been erected by the State Roads Commission on these thoroughfares within the City displaying the same numbers of the State and Federal highway systems that are displayed on the signs outside the City.

The cardinal rule of statutory construction is that statutes should always be construed to effectuate the intention of the Legislature. In determining the legislative intention of an enactment, the court considers its language in its natural and ordinary signification, and if there is no obscurity or ambiguity on the face of it there is no occasion for construction. In such a case, the court is not at liberty to distort the words of the statute from their apparent meaning. As a general rule, the words in a statute are presumed to be used in their popular sense, unless there is reason to believe from the face of the statute that the words were intended to have some other meaning. If the words used are of doubtful or ambiguous meaning, their signification may be enlarged or restricted as may be necessary to make them conform to the intention of the Legislature, if the intention is clearly and certainly ascertained by the process of construction. The meaning must then depend upon the history of the adoption of the statute and the objects in

view. Hence, the proper course of construction in every case is to adopt that meaning of the words which best harmonizes with the context and promotes the policy and objects of the Legislature. *United States v. Hartwell,* 6 Wall. 385, 18 L. Ed. 830, 833; *Norfolk & Portsmouth Traction Co. v. Ellington's Adm'r,* 108 Va. 245, 61 S. E. 779, 782; *Wadsworth v. Boysen,* 8 Cir., 148 F. 771; *Massachusetts Loan & Trust Co. v. Hamilton,* 9 Cir., 88 F. 588, 591.

The word "extension," both by etymology and by common usage, is a flexible term, lending itself to a variety of meanings which must be gathered from the context, since it is a relative term referring to something already begun. In some circumstances, an extension is not confined to mere linear prolongation, but may be a broadening in any direction.

In New Jersey it has been held that an extension of a railway is a prolongation of it from one of its termini to some other designated point. *Trenton Street Ry. Co. v. Pennsylvania R. Co.,* 63 N. J. Eq. 279, 49 A. 481, 483. In California it has been held that a system of street railway lines in a large city is of necessity a radiating system responding in its enlargements to the trend of population and taking off from original laterals at such points of contact as the economics of construction require, and that the construction of an addition to the system connecting with existing lines constitutes an "extension" even though it does not proceed from existing termini of the system. *Hunt v. Boyle,* 204 Cal. 151, 267 P. 97.

In Louisiana it has been held that an extension of a highway means its prolongation in the direction to which it points, and if insurmountable physical objects compel a deflection it must resume its course towards its objective point. *Mayor and City Council of Monroe v. Police Jury of Ouachita Parish,* 47 La. Ann. 1061, 17 So. 498, 499.

We hold that a street within the corporate limits of a city which is a continuation of a State highway and is marked by State signs similar to the signs outside the

city is at least an extension of the State highway system, even if not an actual part of it.

In 1954 the Legislature passed House Bill 45, designed to add a new section to the Motor Vehicle Law providing as follows:

"Notwithstanding any other provision of this Article, the appropriate authorities of any incorporated city, town or village are authorized and empowered to regulate the speed of vehicles on any road, street, lane or alley which is within their respective corporate limits and which has not been designated by the State Roads Commission as a part of the State highway system."

That bill differed from the Act of 1955 in that it did not contain the words "or an extension thereof." The Automobile Club of Maryland voiced opposition to the bill. It was pointed out that it is often difficult for a motorist to determine when he has entered one of the small towns and it would be almost impossible for him to familiarize himself with the various speed limits in the State. The bill was accordingly vetoed by Governor McKeldin. Laws 1954, Vetoes, 299-301.

In the Court below the Associate Engineer of the State Roads Commission admitted that the Commission had erected a number of signs on highways within the limits of the City similar to the signs on these highways outside the City. Among these highways entering the City are the National Highway, Charles Street Avenue, Falls Road, Park Heights Avenue, Reisterstown Road, Liberty Heights Avenue and the Baltimore-Washington Expressway.

In the light of this testimony, the conclusion is irresistible that the City has no power to regulate the speed of vehicles on any street which is a part of the State or Federal highway system or an extension thereof. We further hold that the Court below should issue an in-

junction to restrain the Director of Traffic from setting the speed limits on such highways.

> *Decree affirmed in part and reversed in part, and case remanded for modification of the decree in accordance with this opinion, each side to pay its own costs.*